**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**JOHN DOE 1 and JOHN DOE 2,**
**individually and on behalf of all**
**others similarly situated,**

Plaintiffs,

Case No. 1:26-cv-06710

v.

**KROLL RESTRUCTURING**
**ADMINISTRATION LLC,**

Defendant.

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO PROCEED UNDER PSEUDONYMS**
**AND FOR LIMITED PROTECTIVE ORDER**

**INTRODUCTION**

Plaintiffs John Doe 1 and John Doe 2 respectfully request permission to proceed under

pseudonyms and a limited protective order governing their true identities. Both Plaintiffs are individual

creditors in cryptocurrency bankruptcy cases administered by Defendant Kroll Restructuring

Administration LLC ("Kroll"). Their identities, contact information, claim information, account

holdings, and related financial data are the very categories of information that the bankruptcy courts

protected from public disclosure because naming cryptocurrency creditors can facilitate phishing,

hacking, SIM swapping, robbery, and effectively irreversible theft.

This action alleges that the feared harm occurred after Kroll's August 2023 security incident.

Doe 1 received repeated estate- and Kroll-branded phishing and lost approximately $9,149 in

cryptocurrency after being directed through a counterfeit claims or wallet workflow; he reported the

theft to the FBI's Internet Crime Complaint Center. Doe 2 continues to receive a flood of FTX-,

Kroll-, claim-, verification-, withdrawal-, and distribution-themed phishing. He also alleges that a

legitimate, rights-critical notice directing him to select a distribution provider did not reach him through

the contaminated email channel, while fraudulent messages did, contributing to the forfeiture or loss

of his FTX claim and distribution rights. Publicly linking either man's name to this case would give additional criminals a verified identity, a verified cryptocurrency-creditor history, and a detailed roadmap to the precise claims and vulnerabilities being litigated.

The requested relief is narrow. Plaintiffs will disclose their identities to the Court and to Kroll's counsel, will participate in ordinary discovery, and will permit the Court and Kroll to evaluate every issue bearing on standing, credibility, damages, typicality, and adequacy. The public will have access to the Complaint, the facts, the legal theories, the parties' arguments, and the Court's rulings. Only Plaintiffs' names and identifying contact, account, claim, and wallet information will remain outside the public docket. The Court may revisit anonymity as the case proceeds.

Courts addressing this same risk have already concluded that public disclosure of cryptocurrency-creditor identities can cause serious financial and physical harm. The *Genesis* Bankruptcy Court protected individual creditor identities after an evidentiary hearing. The *FTX* Bankruptcy Court similarly recognized that, once a person's name is linked to FTX, the person can be targeted. And the Western District of Texas permitted FTX and BlockFi creditors to proceed pseudonymously in a directly related putative class action against Kroll arising from this same security incident. These authorities, together with Plaintiffs' actual and ongoing victimization, make the balance under *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189–90 (2d Cir. 2008), unusually clear.

## LEGAL STANDARD

Federal Rule of Civil Procedure 10(a) ordinarily requires a complaint to name all parties. But the Second Circuit permits pseudonymity when a plaintiff's interest in anonymity outweighs the public interest in disclosure and any prejudice to the defendant. *Sealed Plaintiff*, 537 F.3d at 189. The Court considers a nonexclusive set of factors: (1) whether the case involves highly sensitive and personal matters; (2) whether identification poses a risk of retaliatory physical or mental harm; (3) whether identification presents other harms, including whether disclosure would reproduce the injury being litigated; (4) whether the plaintiff is particularly vulnerable; (5) whether the defendant is governmental

or private; (6) prejudice to the defendant and whether it can be mitigated; (7) whether the plaintiff's identity has remained confidential; (8) whether disclosure advances the public interest; (9) whether the public interest in the litigants' identities is atypically weak; and (10) whether a less restrictive alternative can protect confidentiality. *Id.* at 189–90. The factors are non-exhaustive, and the Court may consider any circumstance relevant to the particular case. *Id.* at 190.

**ARGUMENT**

**I.      THE COURT SHOULD GRANT PLAINTIFFS' MOTION TO PROCEED PSEUDONYMOUSLY.**

**A.      The first four factors strongly favor pseudonymity because public identification would expose Plaintiffs to the same targeting risk at the center of this case.**

The litigation concerns highly sensitive personal and financial information: Plaintiffs' identities as FTX and BlockFi creditors; their home and email addresses; cryptocurrency-account and claim information; wallet activity; security-incident status; and, for Doe 1, information concerning an actual cryptocurrency theft and law-enforcement report. Publicly linking a person's name to those facts creates more than embarrassment. It authenticates that the person used cryptocurrency platforms, participated in bankruptcy claims processes, and may receive or hold digital assets.

The *Genesis* Bankruptcy Court made that point after an evidentiary hearing. It found numerous examples of harassment, threats, and attacks motivated by cryptocurrency theft; explained that individual cryptocurrency lenders face heightened financial and physical danger because they are perceived to possess valuable assets; and concluded that publication of names alone can heighten the risk of identity theft and other harm. *See* Declaration of Renner K. Walker ("Walker Decl."), Ex. A at 11–13, 30–33. The *FTX* Bankruptcy Court reached the same practical conclusion: if criminals have a person's name and know that the person is an FTX customer, the person can be targeted, which is what the court needed to prevent. *In re FTX Trading Ltd.*, No. 22-11068, Hr'g Tr. 157:8–21 (Bankr. D. Del. June 9, 2023). The *FTX* and *BlockFi* courts accordingly authorized redaction of individual creditor

names and contact information. *See In re FTX Trading Ltd.*, No. 22-11068, Dkt. 545 (Bankr. D. Del. Jan. 20, 2023); *In re BlockFi Inc.*, No. 22-19361, Dkt. 1757 (Bankr. D.N.J. Oct. 19, 2023).

The danger is not hypothetical for these Plaintiffs. Doe 1 alleges that threat actors used estate- and Kroll-themed communications to draw him into a counterfeit workflow and steal approximately $9,149 in cryptocurrency. Doe 2 alleges continuing estate- and Kroll-branded phishing directed to the same email address Kroll used for official bankruptcy administration. Revealing their names would give other threat actors a new, authoritative public source confirming the victims' identities and connecting them to the detailed factual allegations in the Complaint. Thus, identification would risk reproducing and intensifying the injury being litigated, a consideration the Second Circuit specifically recognizes. *Sealed Plaintiff*, 537 F.3d at 190.

The fourth factor does not depend exclusively on age. Plaintiffs are particularly vulnerable because they have already been identified and repeatedly targeted by specialized phishing attacks that imitates bankruptcy notices, claims portals, distribution providers, KYC requirements, and wallet connections. Doe 1 has already suffered an irreversible digital-asset loss. Doe 2 alleges a continuing flood of fraudulent communications and a bankruptcy-process loss in the same contaminated channel. Their documented history of targeting makes the risk concrete rather than speculative.

The directly related Western District of Texas action confirms the point. That court permitted FTX and BlockFi creditors to proceed under pseudonyms against Kroll because the bankruptcy courts had protected the same customer-creditor information, the plaintiffs continued to receive malicious communications resembling official notices, and public identification would increase the danger. Walker Decl. Ex. B at 3–5. The result is consistent with the *Genesis* court's findings and with this Court's recent use of an incremental, protective-order approach in a putative class action where public identification threatened to recreate the alleged harm. *See Doe v. Tracki, Inc.*, No. 25 Civ. 6577 (AT), ECF No. 30, at 4–7 (S.D.N.Y. Nov. 18, 2025), attached as Walker Decl. Ex. C.

**B.      The fact that Kroll is a private defendant does not outweigh the concrete safety and financial risks.**

The fifth factor asks whether the action challenges governmental or private conduct. Courts sometimes scrutinize anonymity more closely in suits against private parties because public accusations can affect private reputations. *See Doe v. Skyline Automobiles, Inc.*, 375 F. Supp. 3d 401, 406 (S.D.N.Y. 2019). That consideration carries little weight here. Kroll publicly disclosed the security incident, and the incident has been the subject of public bankruptcy filings and related litigation. Pseudonymity will not hide Kroll's identity, the allegations, the evidence, the requested relief, or any judicial ruling. It will only prevent the public docket from becoming another index linking particular individuals to cryptocurrency claims and account histories. *See EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 112 (E.D.N.Y. 2003) (discounting reputational concerns where the underlying subject was already public).

**C.      Kroll will suffer no material prejudice because it will know Plaintiffs' identities and retain every litigation right.**

The sixth factor strongly favors Plaintiffs. They do not seek anonymity from Kroll. They will disclose their true identities and contact information to Kroll's outside counsel and appropriate in-house counsel under confidentiality protections. Kroll will be able to investigate Plaintiffs' bankruptcy accounts, notices, portal records, support contacts, phishing evidence, transactions, standing, causation, damages, credibility, and class-representative qualifications. It may take discovery and cross-examine Plaintiffs in the ordinary course.

The Western District of Texas found a similarly low risk of prejudice because the pseudonymous FTX and BlockFi plaintiffs disclosed their identities for investigation and litigation. Walker Decl. Ex. B at 4–5. In *Tracki*, this Court likewise held that a protective order could substantially mitigate a private defendant's legitimate need to know a putative class representative's identity while preserving public anonymity. Walker Decl. Ex. C at 5–7. The same approach is appropriate here. Plaintiffs' names may be relevant to Kroll and the Court, but they are not necessary on the public docket for Kroll to defend the action or for the Court to evaluate Rule 23.

**D.    Plaintiffs have kept their identities confidential, and the bankruptcy courts already protected the same information.**

The seventh factor favors Plaintiffs. They have not publicly identified themselves as the persons bringing these claims. Their public pleadings use pseudonyms, and the relevant bankruptcy proceedings protected individual creditor identities and contact information from general disclosure. Plaintiffs' identities may be known to Kroll, estate professionals, or threat actors because of the alleged breach, but that does not make the information public. Nor does a prior criminal's possession of a victim's identity eliminate the need to protect the victim from different criminals who can exploit a public federal docket indefinitely.

**E.    The public interest concerns Kroll's conduct and the Court's rulings, not Plaintiffs' names.**

The eighth and ninth factors favor pseudonymity. The public has a legitimate interest in the administration of bankruptcy cases, the security of court-appointed professionals, the handling of creditor information, the standards governing data-breach response, and the adjudication of a putative class action. Every one of those subjects will remain public. Plaintiffs' names add little or nothing to the public's ability to understand the facts, assess the legal issues, monitor the Court, or evaluate any class-certification ruling.

The Western District of Texas explained that the public interest remains protected when the basic facts are public and the plaintiffs' identities are not critical to understanding the case. Walker Decl. Ex. B at 4. That is especially true here because the information Plaintiffs seek to protect is the same information the underlying bankruptcy courts determined should not be placed on public dockets. The Court can require public disclosure of all nonidentifying facts necessary to evaluate Plaintiffs' standing, claims, and Rule 23 adequacy while keeping their names and direct identifiers under seal.

**F.    No less restrictive mechanism can prevent the harm; an incremental pseudonym order is the narrowest effective remedy.**

The tenth factor also favors Plaintiffs. Redacting only home addresses, email addresses, or account numbers would not solve the problem. A public name can be combined with data brokers,

social media, bankruptcy-related phishing lists, and other public or breached information to locate contact details and construct new attacks. The *Genesis* court found that names alone can materially heighten the risk. Walker Decl. Ex. A at 11, 30. And once a name is placed on the public docket, disclosure cannot be undone. *See Doe v. Gooding*, No. 20-cv-06569, 2022 WL 1104750, at *7 (S.D.N.Y. Apr. 13, 2022) ("disclosure is a one-way street").

The requested order is thus the least restrictive effective measure. It preserves public access, gives Kroll and the Court Plaintiffs' identities, permits full discovery, and allows the Court to revisit pseudonymity at later stages. Plaintiffs also propose that the parties meet and confer on a conventional protective order after Kroll appears, consistent with *Tracki*. This approach protects Plaintiffs now without prejudging whether additional disclosure may become necessary at a hearing or trial.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court permit them to proceed publicly as John Doe 1 and John Doe 2 during pretrial proceedings and enter the proposed limited protective provisions governing their true identities and related identifying information.

Dated: August 6, 2026

Respectfully submitted,

*/s/ Renner K. Walker*
Renner K. Walker
**HAUSFELD LLP**
33 Whitehall St., 14th Floor
New York, NY 10004
Tel.: 646-357-1100
rwalker@hausfeld.com

Nicholas Andrew Hall (*pro hac vice* forthcoming)
**HALL ATTORNEYS P.C.**
State Bar No. 24069863
nhall@hallattorneys.com
P.O. Box 1370
Edna, Texas 77957
Tel.: 713-428-8967

*Attorneys for Plaintiffs and the Putative Class*

**CERTIFICATE OF COMPLIANCE**

I certify that this memorandum of law contains 2,038 words, excluding the caption, signature

block, and certificates, and therefore complies with Local Civil Rule 7.1(c).

*/s/ Renner K. Walker*
Renner K. Walker

## CERTIFICATE OF SERVICE

I certify that on August 6, 2026, the foregoing document was filed through CM/ECF. Because Defendant has not yet appeared in this action, Plaintiffs also transmitted the document by email to counsel representing Kroll in the related SDNY action at the following addresses:

William E. Ridgway - william.ridgway@skadden.com
Clare B. Lilek - clare.lilek@skadden.com
Michael Judah - michael.judah@skadden.com

*/s/ Renner K. Walker*
Renner K. Walker