**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN DOE 1 and JOHN DOE 2, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KROLL RESTRUCTURING ADMINISTRATION LLC,<br><br>Defendant. | Civil Action No. 1:26-cv-06710-GBD |

**DEFENDANT KROLL RESTRUCTURING ADMINISTRATION LLC'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO PROCEED UNDER PSEUDONYMS AND FOR LIMITED PROTECTIVE ORDER**

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

LEGAL STANDARD ..............................................................................................2

ARGUMENT ........................................................................................................3

I. The bankruptcy court sealing orders do not support Plaintiffs' position. ............................3

II. None of the Plaintiff-Specific Factors Favor Pseudonymity. ............................................5

A. This case involves no sensitive personal matters, retaliation risk, or particular vulnerability (Factors 1, 2, and 4)............................................................5

B. Plaintiffs have not shown a sufficiently specific, incremental harm from disclosure (Factors 3, 7, and 10). ...................................................................6

III. The Remaining *Sealed Plaintiff* Factors Heavily Favor Disclosure. ................................8

A. Public interest requires disclosing class representative identity (Factors 8 and 9). ..........................................................................................................8

B. Kroll's status as a private defendant favors disclosure (Factor 5). ............................9

C. Pseudonymity would prejudice Kroll (Factor 6). .....................................................9

CONCLUSION ....................................................................................................11

## INTRODUCTION

Plaintiffs ask this Court to let them hide behind pseudonyms while simultaneously stepping forward as named class representatives in a Rule 23(b)(3) action seeking monetary damages on behalf of a nationwide class—a combination courts reject, and for good reason. Rule 10(a) reserves exceptions for the rare case involving "intensely personal" matters. Examples include sexual assault, serious mental illness, threats of physical violence. Exceptions also extend to uniquely vulnerable plaintiffs, such as minors. Plaintiffs are adult cryptocurrency investors asserting a claim about phishing emails. If that were enough, every data-breach plaintiff could litigate anonymously. That is a categorical exception to Rule 10(a) that no court has recognized.

The only authority Plaintiffs offer cuts against them. The bankruptcy protective orders they cite sealed the identity of *involuntary* participants. Those were creditors who had *no choice* but to file claims to preserve their financial interests. But those same courts drew a line at active litigants. The FTX court made clear that creditors who "want to participate actively in the case" must identify themselves because "people have a right to know who they are litigating against."[1] The Genesis court—presiding over a bankruptcy in which neither Plaintiff was even a creditor—was even more direct. It explained, "if you inject yourself into it and you want to be an active participant, you can't . . . be under seal."[2]

Anonymity is also incompatible with Plaintiffs' role as putative class representatives. Absent class members have a right to know who purports to represent them. As this Court has recognized, anonymity can "preclude potential class members from properly evaluating the

[1] Declaration of Richard D. Salgado in Opposition to Pls' Motion to Proceed Under Pseudonyms; Ex. 1-A, Hr'g Tr. June 9, 2023, 158:22–159:7, *In re FTX Trading Ltd., et al.*, No. 22-11068 (JTD), ECF 1612 (Bankr. D. Del. June 12, 2023).

[2] *Id.*, Ex. 1-B, Hr'g Tr. Feb. 16, 2024, 31:14–24, *In re Genesis Global Holdco, LLC, et al.*, No. 23-10063 (SHL), ECF 1348 (Bankr. S.D.N.Y. Feb. 21, 2024).

qualifications of the class representative." *Michael v. Bloomberg L.P.,* No. 14-CV-2657 (TPG), 2015 WL 585592, at *4 (S.D.N.Y. Feb. 11, 2015). In an analogous data-breach class action where disclosure risked aggravating the privacy injury, the court still required disclosure of the named representatives. It did so based on the "compelling public interest in open court proceedings, *particularly in the context of a class action*." *In re Ashley Madison Customer Data Sec. Breach Litig.*, No. 2669, 2016 WL 1366616, at *4 (E.D. Mo. Apr. 6, 2016).[3]

Nor can Plaintiffs show the concrete, incremental danger necessary to override the presumption of openness. The criminals who allegedly targeted them obtained their information from the 2023 breach itself, not from any court docket. Plaintiffs have also had nearly three years to secure their accounts and assets. What remains is speculation that cannot outweigh the public's right of access, Kroll's ability to defend itself openly against accusers who attack its reputation, or the interests of the absent class members Plaintiffs seek to represent. Targeted redactions can address any legitimate confidentiality concern. The Court should deny the Motion.

## LEGAL STANDARD

The Federal Rules require complaints to "name all the parties." Fed. R. Civ. P. 10(a). Courts cannot set aside this requirement "lightly," as it reflects "the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Doe v. Weinstein*, 484 F. Supp. 3d 90, 93 (S.D.N.Y. 2020). Accordingly, "there is a presumption that a plaintiff will proceed under [his] own name." *Doe v. Alexander*, No. 25 Civ. 2077 (JPC), 2025 WL 1637941, at *2 (S.D.N.Y. June 9, 2025). "Pseudonyms are the exception and not the rule." *Id*. (quoting *United States v. Pilcher*, 950 F.3d 39, 45 (2d Cir. 2020)).

[3] Unless otherwise noted in this Response, all emphasis is added and all internal citations, quotation marks, and alterations are omitted.

A plaintiff seeking to proceed anonymously has the burden of showing that the need for anonymity outweighs the presumption of public access and any prejudice to the defendant. This means applying the non-exhaustive factors in *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189–190 (2d Cir. 2008).[4] "It is the exceptional case in which a plaintiff may proceed under a fictitious name," *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996), and generalized or conclusory allegations of potential harm do not carry the plaintiff's burden. *See Doe v. Freydin*, No. 21 Civ. 8371 (NRB), 2021 WL 4991731, at *2 (S.D.N.Y. Oct. 27, 2021).

**ARGUMENT**

**I. The bankruptcy court sealing orders do not support Plaintiffs' position.**

Plaintiffs' main support is a set of bankruptcy court orders sealing the identities of passive creditors in the FTX, BlockFi, and Genesis cryptocurrency exchange bankruptcies.[5] Those orders do not help them. Plaintiffs significantly misstate what those courts did.

Those courts applied a statutory standard exclusive to bankruptcy proceedings. 11 U.S.C. § 107(b)–(c).[6] The *Sealed Plaintiff* test applies here and demands a different analysis. But even on their own terms, the bankruptcy orders undermine Plaintiffs' position. Judge Lane presides over the

---

[4] The Second Circuit's list of ten non-exhaustive factors are well-known: (1) sensitivity of the matters underlying the litigation; (2) risk of retaliation to the party seeking anonymity and other non-parties (3) risk of other harms and the likely severity of those harms; (4) the plaintiff's particular vulnerability to harm; (5) whether the suit involves governmental actors; (6) prejudice to the defendant; (7) "whether the plaintiff's identity has thus far been kept confidential"; (8) "whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity"; (9) "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities"; and (10) "whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff." *Sealed Plaintiff*, 537 F.3d at 189–190.

[5] *See* Mem. in Support of Mot., ECF 3, at 4 ("Mem.") (citing *In re FTX Trading, Ltd.*, No. 22-11068, Dkt. 545 (Bankr. D. Del.) and *In re BlockFi Inc.*, No. 22-19361, ECF 1757 (Bankr. D.N.J.)); ECF 4-1 (order granting claimants privacy protections in Genesis bankruptcy).

[6] Section 107(c) sealing protects creditors who may receive assets through future distributions and thus face the risk that identity thieves will usurp those assets. By Plaintiffs' own allegations, that rationale no longer applies to them: Doe 1 alleges that his cryptocurrency was already stolen, and Doe 2 alleges that his FTX claim and distribution rights have already been forfeited. *See* Compl., ECF 1, ¶¶ 13, 15; Mem., at 1–2.

Genesis bankruptcy—a case that did not involve either of these Plaintiffs but which they cite. He made clear that the protection extended only to passive creditors, not parties who choose to engage actively: "I think some people may have misunderstood where the line was in terms of sealing. That is if you inject yourself into it and ***you want to be an active participant***, you can't – – ***you can't be under seal***."[7]

Judge Lane's written decision stated explicitly that "cryptocurrency customers who are members of official and ad hoc committees of creditors ***must identify themselves and are not protected*** under Section 107(b) or (c) from disclosure of their names 'because ***people have a right to know who they're litigating against.***'"[8]

And Judge Dorsey, presiding over FTX, was equally direct:

> If you want to be a member of the Unsecured Creditors Committee, you have to identify yourself because people have a right to know who they are litigating against and they can't do that if they don't know who they are. So I don't think that they are protected under 107(c) or (b), and ***those names have to be disclosed if they're going to participate***.[9]

Plaintiffs' reliance on the Western District of Texas order is also misplaced. That order arose from an *unopposed* motion.[10] Kroll never presented—and the court never considered—the objections Kroll raises here.[11] An order entered without adversarial briefing on identification risks,

---

[7] *See supra* note 2.

[8] *In re Genesis Glob. Holdco, LLC*, 652 B.R. 618, 641–42 (Bankr. S.D.N.Y. 2023).

[9] *See supra* note 1.

[10] *See* Ex. 1-C, *Doe v. Kroll Restructuring Admin. LLC*, No. 1:25-cv-01319-RP, ECF 17 (W.D. Tex. Nov. 17, 2025) (*Unopposed* Motion to Proceed Under Pseudonyms). In an effort to cooperate with the same Plaintiffs' counsel and not anticipating that they would later weaponize it, Kroll took no position at that time on the plaintiffs' motion in the Western District of Texas. Subsequent developments underscore the limited significance of that order. On July 22, 2026, the Magistrate Judge in the Western District of Texas recommended compelling John and Jane Doe 1 to arbitration and dismissing John Doe 2's claims with prejudice. *See* Ex. 1-D, *id.* ECF 51, at 11, 19–20 (Report & Recommendation). Whatever limited significance an unopposed preliminary order might have had, it should not become a transferable litigation advantage wielded across successive actions against Kroll.

[11] Kroll has now opposed pseudonymity in that matter and is awaiting the court's ruling. Ex. 1-E (Motion in Western District of Texas). In addition to similar legal arguments as here, Kroll moved to remove the

prejudice, or the public interest carries no persuasive weight. That court also relied on the same bankruptcy orders Plaintiffs invoke here—orders that, as shown above, protect only passive creditors. Mem. at 4.

## II. None of the Plaintiff-Specific Factors Favor Pseudonymity.

The plaintiff-specific *Sealed Plaintiff* factors are: whether the case involves highly sensitive matters, whether disclosure risks retaliation or would cause other concrete harm, whether the plaintiff is particularly vulnerable, whether the plaintiff's identity remains confidential, and whether less restrictive alternatives exist. 537 F.3d at 189–90. Each weighs against pseudonymity.

### *A. This case involves no sensitive personal matters, retaliation risk, or particular vulnerability (Factors 1, 2, and 4).*

***Factor 1 (sensitivity)***: This litigation does not concern the type of highly sensitive and personal matters that warrant anonymity—such as sexual assault or minor victims. *See Shakur*, 164 F.R.D. at 361; *Weinstein*, 484 F. Supp. 3d at 93–94. Plaintiffs rely on *Doe v. Tracki, Inc.*, but that case could not be more different. No. 25 Civ. 6577 (AT), 2025 WL 3215570 (S.D.N.Y. Nov. 18, 2025). *Tracki* involved a named plaintiff who was a stalking victim and feared that using her name would endanger her physical safety and that of her minor daughters. *Id.* at *2. The Court, describing the allegations as "harrowing," emphasized that the plaintiff's "highly sensitive" location-tracking data implicated physical-safety concerns. *Id.* at *2–3. No such concern exists here.

Neither Plaintiff alleges any physical harm—their claims arise from a data-security incident and alleged financial losses. Holding cryptocurrency does not transform this commercial dispute into a personal one. Cryptocurrency ownership is increasingly common—millions of

---

pseudonymity because Plaintiffs' counsel identifies one of his clients in that case in public marketing materials for a related business (while linking to his law firm website where he advertises the pseudonymity he secured). Ex. 1 ¶ 8; *see also infra* § III.C.

Americans hold digital assets.[12] If merely being a cryptocurrency investor sufficed for pseudonymity, the exception would swallow Rule 10(a). *See Abellard v. Stretto, Inc.*, 2025 WL 1674265, at *6 (C.D. Cal. Apr. 25, 2025) ("Plaintiffs' theory of increased harm due to their status as cryptocurrency holders is also insufficient to demonstrate an increased risk of identity theft.").

***Factor 2 (retaliation)***: Plaintiffs do not contend that Kroll or anyone associated with Kroll has threatened them or that disclosure would expose them to reprisal for filing suit. Plaintiffs have already voluntarily disclosed their identities to Kroll. *Cf. Doe v. Gong Xi Fa Cai, Inc.*, No. 19-CV-2678 (RA), 2019 WL 3034793, at *1 (S.D.N.Y. July 10, 2019) (retaliation factor implicated where plaintiff feared employer reprisal for Title VII claim).

***Factor 4 (vulnerability)***: *Sealed Plaintiff* directs courts to consider vulnerability "particularly in light of [the plaintiff's] age." 537 F.3d at 190. Plaintiffs identify no age, disability, or comparable characteristic making them unusually susceptible to harm. That Doe 1 previously received phishing emails and lost $9,149 in cryptocurrency does not establish the plaintiff-specific vulnerability this factor contemplates. If it did, any plaintiff alleging a repeatable injury could claim vulnerability by pointing to the complaint's own allegations. Plaintiffs have also known of the risk for nearly three years—ample time to take precautionary measures.

### *B. Plaintiffs have not shown a sufficiently specific, incremental harm from disclosure (Factors 3, 7, and 10).*

***Factor 3 (risk of harm)***: On the factor Plaintiffs principally rely upon, they fall short. A plaintiff seeking anonymity must establish "with sufficient specificity the incremental injury that would result from disclosure of her identity"—*i.e.*, "unique harm above and beyond any harm

[12] *See* Pew Research Ctr., *Majority of Americans Aren't Confident in the Safety and Reliability of Cryptocurrency* (Oct. 24, 2024), https://www.pewresearch.org/short-reads/2024/10/24/majority-of-americans-arent-confident-in-the-safety-and-reliability-of-cryptocurrency/ (finding that 17% of U.S. adults have invested in, traded, or used cryptocurrency).

caused by the underlying events." *Freydin*, 2021 WL 4991731, at *2; *see also Rapp v. Fowler*, 537 F. Supp. 3d 521, 528–29 (S.D.N.Y. 2021). "[M]ere speculation" does not suffice. *Doe v. Skyline Autos. Inc.*, 375 F. Supp. 3d 401, 405 (S.D.N.Y. 2019).

Plaintiffs' claimed harm from identification is indistinguishable from the harm underlying their claims. They allege that cybercriminals targeted them with phishing attacks because the breach exposed their identities as cryptocurrency creditors. They now argue that publicly identifying them as Plaintiffs could expose them to *more* phishing attacks.[13] But that merely describes the possibility that the underlying harm could recur—it does not identify a distinct injury caused by disclosing their names on a federal docket. The criminals who allegedly targeted Plaintiffs obtained their information from the breach itself, not from any court filing. No evidence suggests that PACER has ever served as a source for cryptocurrency-related targeting. That Doe 1's alleged loss occurred years after the August 2023 breach only underscores how attenuated the claimed causal chain has become. ***Factor 7 (continued anonymity)*****:** Plaintiffs bring this action *because* the breach allegedly already exposed their identities. Proceeding anonymously does not change the fact that cybercriminals already have this information. *See Shakur*, 164 F.R.D. at 362 (denying anonymity because "those who presumably would have any animosity toward [the plaintiff] already know her true identity").

***Factor 10 (less restrictive alternatives)*****:** Protecting Plaintiffs' names bears no relationship to protecting the genuinely sensitive information that might facilitate cybercrime. If pleadings require disclosing wallet addresses, account numbers, or claim amounts, targeted sealing or

[13] The conduct of Plaintiffs' counsel raises questions about the sincerity of this supposed concern. John Doe 1 in the Western District of Texas action was a claimant in the FTX bankruptcy who alleges his data was breached and that he faces the same ongoing risks of future harm requiring pseudonymity that Plaintiffs argue here. Ex. 1-C. Yet, Plaintiffs' counsel continues to publicly identify him months after the court granted pseudonymity protection on the unopposed motion. *Supra* note 10; Ex. 1 ¶ 8.

redaction can protect that information. *See Freydin*, 2021 WL 4991731, at *3. Kroll does not oppose such measures—but does oppose concealing Plaintiffs' identities altogether, which is neither necessary nor proportionate to any legitimate confidentiality concern.

## III. The Remaining *Sealed Plaintiff* Factors Heavily Favor Disclosure.

The remaining *Sealed Plaintiff* factors—whether the public interest favors disclosure, whether the suit challenges a private party, and whether the defendant suffers prejudice—all weigh heavily against anonymity here.

### *A. Public interest requires disclosing class representative identity (Factors 8 and 9).*

A class representative owes fiduciary duties to absent members who can't evaluate whether he is adequate—or even decide whether to opt out—if they do not know who he is. *See Bloomberg L.P.,* 2015 WL 585592, at *4. In *Ashley Madison*, the court refused pseudonymity even though disclosing the plaintiffs' "identities could expose their sensitive personal and financial information . . . and exacerbate the privacy violations underlying their lawsuit." 2016 WL 1366616, at *4. It did so because "there are significant differences between the roles of class representative and class member." *Id*. The court explained, "class representatives have a fiduciary obligation to fairly represent the entire class and generally receive an incentive award as compensation for work done on behalf of the class." *Id*. Therefore, "given the importance of the role of class representative," the court required the plaintiffs "to disclose their identities so that the public, including the putative class members they seek to represent, know who is guiding and directing the litigation." *Id.*

So too here—Plaintiffs seek to lead a nationwide damages class while refusing to let its members know who they are. These are not passive class *members*, but Rule 23(b)(3) putative class *representatives* seeking a monetary award against a private company.[14]

***B. Kroll's status as a private defendant favors disclosure (Factor 5).***

Kroll is a private defendant, and "courts are less inclined to allow Plaintiffs to proceed anonymously in private party cases." *Skyline Autos.*, 375 F. Supp. 3d at 406. Plaintiffs argue that Kroll's public disclosure of the security incident diminishes this factor. Mem. at 5. But Kroll retains a substantial reputational interest in publicly defending against the serious accusations here. *Skyline Autos.*, 375 F. Supp. 3d at 406.

Plaintiffs' reliance on *EW v. New York Blood Center*, 213 F.R.D. 108 (E.D.N.Y. 2003), is misplaced. There, the court emphasized that the defendant was "not an ordinary private party" because it was "organized solely to perform an important, public service," rendering the case "analogous to one involving a government defendant" with a correspondingly "lesser interest in personal reputation." *Id.* at 112. Kroll, by contrast, is an ordinary private defendant being accused.

***C. Pseudonymity would prejudice Kroll (Factor 6).***

Plaintiffs contend that Kroll will suffer no prejudice because they will disclose their identities to Kroll's counsel under confidentiality protections. But Plaintiffs' proposed restrictions would prevent Kroll from disclosing those identities to third parties in discovery, hindering Kroll's ability to defend itself. *See Doe v. Combs*, No. 24 Civ. 7776 (NRB), 2025 WL 1079038, at *3 (S.D.N.Y. Apr. 9, 2025) ("concealment of plaintiff's identity could hamper defendants' ability to conduct discovery," because "defendants are likely to seek discovery from third-party witnesses,"

[14] In *Tracki*, the Court permitted the plaintiff to proceed pseudonymously, but on dramatically different facts that included a stalker's "documented history of tracking [the plaintiff's] movements to public and private locations" and harassment affecting her daughter. 2025 WL 3215570, *2–3. Likewise, the analysis might be different in 23(b)(2) class action seeking only injunctive relief. That is not this case.

and where "one party is anonymous and others are not, there exists a significant 'asymmetry in fact-gathering'"), *aff'd*, Nos. 25-986, 25-991, 25-1021, 2026 WL 742650 (2d Cir. Mar. 17, 2026).

That asymmetry is not hypothetical. Kroll's defense on standing, causation, and damages runs directly through third parties: the FTX estate and its distribution providers, email providers, cryptocurrency exchanges, blockchain-forensics vendors, and—for Doe 1—the federal authorities to which he says he reported the alleged theft. That all necessarily uses Plaintiffs' true identities. Under the approach Plaintiffs seek, each of those routine steps becomes a negotiated, confidentiality-designated event, subject to objections and motion practice.

The nature of Plaintiffs' causation theory compounds the problem. Plaintiffs allege that the phishing they received traces to Kroll's security incident. Kroll is entitled to investigate and to prove alternative sources of exposure. This means investigating data-broker listings, unrelated breaches, Plaintiffs' own public cryptocurrency footprints, and the reuse of the same email addresses across other compromised services. That investigation cannot meaningfully proceed if Kroll is barred from using Plaintiffs' names outside the confines of a protective order. And because facts about Plaintiffs' identities bear directly on causation and are central to Kroll's defense, Kroll's own filings would have to be redacted to preserve Plaintiffs' anonymity. This would produce an unbalanced and misleading public record of this litigation.

Importantly, Plaintiffs' counsel advertises the pseudonym protection obtained in the Western District of Texas to recruit additional claimants.[15] They would no doubt do the same with any such order here. Plaintiffs in subsequent actions have also invoked that order to seek

[15] *See* Ex. 1-F, *Nicholas Hall*, Hall Attorneys, https://www.hallattorneys.com/people/nicholas-hall (last visited August 20, 2026).

anonymity themselves.[16] The result is self-reinforcing: anonymous plaintiffs accuse Kroll of wrongdoing, use that anonymity as a recruitment tool, and then cite prior pseudonym orders as authority for more anonymity. This is highly prejudicial to Kroll.

## CONCLUSION

For these reasons, Kroll respectfully requests that the Court deny Plaintiffs' Motion to Proceed Under Pseudonyms and for Limited Protective Order.

Dated: August 20, 2026
New York, New York

Respectfully submitted,

*/s/ Emily T. Chen*

Richard Salgado (*pro hac vice* pending)
Texas Bar No. 24060548
Seth M. Young (*pro hac vice* forthcoming)
Texas Bar No. 24120675
**McDermott Will & Schulte LLP**
2801 North Harwood Street, Suite 2600
Dallas, TX 75201
Telephone: (214) 210-2797
Facsimile: (972) 232-3098
richard.salgado@mcdermottlaw.com
smyoung@mcdermottlaw.com

Emily T. Chen
New York Bar No. 546116
**McDermott Will & Schulte LLP**
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: (212) 547-5777
Facsimile: (212) 547-5444
echen@mcdermottlaw.com

*Counsel for Defendant Kroll Restructuring Administration LLC*

[16] *See, e.g.*, *John Doe v. Kroll Restructuring Admin.*, No. 1:26-cv-02363-JPC, ECF 11, at 7 (S.D.N.Y. Apr. 28, 2026); *Jane Doe v. Instructure, Inc.*, No. 6:26-cv-00295-ADA-DTG, ECF 2, at 2–3 (W.D. Tex. May 15, 2026); Ex. 1-G, *John Doe v. T-Mobile USA, Inc.*, No. 26-2-13858-3 SEA, DKT 7, at 4–5 (Wash. Super. Ct. Apr. 27, 2026).

**CERTIFICATE OF COMPLIANCE**

I certify that this memorandum of law contains fewer than 8,750 words, excluding the caption, signature block, and certificates, and therefore complies with Local Civil Rule 7.1(c).

/s/ *Emily T. Chen*
Emily T. Chen

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 20th day of August, 2026, a true and correct copy of this document was served via the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ *Emily T. Chen*
Emily T. Chen